_____

**SO ORDERED,**

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: July 3, 2018**

The Order of the Court is set forth below. The docket reflects the date entered.
_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**

IN RE:

    ANNA RUCKER,                                                                   CASE NO. 17-04552-NPO

    DEBTOR.                                                                                      CHAPTER 13

**MEMORANDUM OPINION AND ORDER SUSTAINING, IN PART,**
**OBJECTION TO CONFIRMATION AND RESPONSE TO MOTION TO VALUE**

This matter came before the Court for hearing on June 4, 2018 (the "Hearing"), on the Objection to Confirmation and Response to Motion to Value (the "Objection") (Dkt. 13) filed by 21st Mortgage Corporation ("21st Mortgage") in the above-referenced bankruptcy case. At the Hearing, Robin Elizabeth Pate represented 21st Mortgage, and Timothy Lamar Gowan represented the debtor, Anna Rucker (the "Debtor"). During the Hearing, 21st Mortgage introduced into evidence one (1) exhibit, and the Debtor introduced into evidence two (2) exhibits.[1] 21st Mortgage presented the testimony of one (1) witness: Robert Keck ("Keck"), a certified manufactured home appraiser, and the Debtor presented the testimony of one (1) witness: John N. Crutcher

---

[1] Hereinafter, exhibits introduced into evidence at the Hearing by 21st Mortgage are cited as "(21st Mortgage Ex. __)", and exhibits introduced into evidence at the Hearing by the Debtor are cited as "(Debtor Ex. __)".

("Crutcher"), a Mississippi certified real estate appraiser. After fully considering the matter, the Court finds as follows:[2]

## Jurisdiction

This Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (L). Notice of the Hearing was proper under the circumstances.

## Facts

1. To finance the purchase of a 2008 Pinnacle 32' x 66' manufactured home (the "Home"), the Debtor signed a Consumer Loan Note, Security Agreement and Disclosure Statement (the "Note") in favor of 21st Mortgage in the principal amount of $62,531.30 with a down payment of $6,255.00 and an interest rate of 10.01% in 2013 (Dkt. 13). The Debtor granted 21st Mortgage a security interest in the Home to secure repayment of the Note. *Id.* Although the Home is the Debtor's residence, it is considered personal property and not real property of the Debtor. (Dkt. 3 at 7).

2. On December 11, 2017, the Debtor filed a voluntary petition for relief (the "Petition") (Dkt. 1) under chapter 13 of the U.S. Bankruptcy Code (the "Code").[3] In Schedule D: Creditors Who Have Claims Secured by Property (Dkt. 3 at 10), the Debtor listed 21st Mortgage as having a secured claim of $30,000.00 and an unsecured claim of $27,135.30.

3. Contemporaneously with the filing of the Petition, the Debtor submitted the Chapter 13 Plan and Motions for Valuation and Lien Avoidance (the "Plan") (Dkt. 5) in which she

---

[2] The Court makes the following findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[3] Hereinafter, all code sections refer to the Code found at Title 11 of the United States Code, unless otherwise noted.

requested the Court to set the value of the Home at $30,000.00 for purposes of Plan confirmation. The Plan also provides for monthly payments of $769.00 to the chapter 13 trustee and the sum of $500.00 to unsecured creditors.

4.      On December 27, 2017, 21st Mortgage filed a proof of claim in the amount of $56,226.65, consisting of the principal amount of $50,659.27, interest due of $3,205.04, and late fees and other charges of $2,362.34. (Bankr. Cl. 4-1).

5.      On January 23, 2018, 21st Mortgage filed the Objection, urging the Court not to confirm the Plan on the ground that the Debtor's valuation of the Home is insufficient.

6.      At the outset of the Hearing, counsel for the parties agreed that the Home is the Debtor's personal property and primary, personal residence.

## Discussion

The Debtor invokes the "cram down" option under § 1325(a)(5)(B) to pay the present value of the Home in sixty (60) monthly installments during the life of the Plan. The cram down option, in combination with § 1322(b)(2), allows the Debtor to keep the Home over 21st Mortgage's objection, but she must pay 21st Mortgage no less than the present value of its allowed secured claim, that is, the present value of the Home, and 21st Mortgage retains its lien on the Home.[4] *Till v. SCS Credit Corp.*, 541 U.S. 465, 476 (2004); *In re Stringer*, 508 B.R. 668, 672 (Bankr. N.D. Miss. 2014). The sole issue before this Court is to determine the present value of the Home. To the extent 21st Mortgage's claim in the amount of $56,226.65 exceeds the present value of the

---

[4] Section 1322(b)(2) allows a debtor to modify the rights of holders of secured claims with the exception of any claim that is "secured only by a security interest in real property that is the debtor's residence." 11 U.S.C. § 1322(b)(2). Because the Home is personal property, not real property, the Debtor may modify 21st Mortgage's rights as a secured creditor through the Plan.

Home, that portion of its claim is unsecured. 11 U.S.C. § 506(b). As previously mentioned, the Plan proposes to pay a total of $500.00 to all general unsecured claims.

**A.      § 506(a)**

The present value of 21st Mortgage's allowed secured claim is governed by § 506(a). Section 506(a) provides:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
>
> (2)     If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. § 506(a). The first sentence of § 506(a)(2) requires courts to determine the value of an allowed claim based on the replacement value of the personal property securing that claim. The second sentence of § 506(a)(2) defines "replacement value" as "the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined." 11 U.S.C. § 506(a)(2); *see Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 963 (1997). The Code, however, does not articulate a specific method for implementing this definition of "replacement value." As a result, bankruptcy courts determine valuation questions by reviewing the facts and circumstances of each case. *See Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 799 (5th Cir. 1997). Importantly, "[t]he bankruptcy court is not bound by valuation opinions or reports submitted by appraisers, and may

form its own opinion as to the value of property in bankruptcy proceedings." *In re The Grind Coffee & Nosh, LLC*, No. 11-50011-KMS, 2011 WL 1301357, at *6 (Bankr. S.D. Miss. Apr. 4, 2011). While the bankruptcy court "may accept an appraisal in its entirety," it does not have to do so and "may choose to give weight only to those portions of an appraisal that assist the [c]ourt in its determination." *Id.*

B.     **Value of the Home**

Courts routinely have approved the use of the National Appraisal System ("NAS") with the National Automobile Dealers Association ("NADA") Manufactured Housing Appraisal Guide (the "NADA Guide") for determining the replacement value of manufactured homes. *See* Opinion and Order Sustaining Objection to Confirmation (Dkt. 61), *In re Landrum*, No. 17-52357-KMS, slip op. at 3 (Bankr. S.D. Miss. June 11, 2018); *In re Munro*, No. 17-50039-KMS, 2017 WL 3141917, at *4 (Bankr. S.D. Miss. July 24, 2017); *In re Kollmorgen*, No. 11-10904, 2012 WL 195200, at *4 (Bankr. D. Kan. Jan. 20, 2012). Under the NADA Guide, "the home's make, model, age and estimated remaining physical life are considered in arriving at the value of the home's base structure." *In re Thornton*, No. 15-6762-RLM, 2016 WL 3092280, at *2 (Bankr. S.D. Ind. May 23, 2016). Additionally, "[t]he base value is multiplied by a 'location adjustment' percentage." *Id.* This "figure is multiplied by a 'condition adjustment' percentage," which is determined from a "standard form worksheet and assigning a point value to the standard items listed on the worksheet which are typically found within or on the exterior of a manufactured home." *Id.* Finally, "[t]he value is further adjusted by taking into account the cost of repairs and any add-on components (upgraded items not typically included in a manufactured home)." *Id.* In short, "[t]he NADA [G]uide is based on market information derived from all NADA regions and contemplates use of both the cost and sales comparison approaches, where appropriate." *Id.*

Here, the parties disagree significantly on the value of the Home. In accordance with the NADA Guide, 21st Mortgage asserts that the market value of the Home is $65,500.00. (21st Mortgage Ex. A). The Debtor, on the other hand, asserts that the Court cannot rely solely on the NADA Guide and contends that the market value of the Home is $22,000.00 (Debtor Ex. A).

Keck, who appraised the Home on behalf of 21st Mortgage, identified the Home as a 2007 home manufactured by Patriot Homes under the trade name Pinnacle, with a base value of $53,541.00 from the NADA Guide. (21st Mortgage Ex. A at 10, 14). Factoring in a 97% multiplier for the Home's location in Mississippi and a 111% multiplier for its "good" condition as determined by physical inspection, then adjusting downward for the cost of needed repairs and upward for various components and accessories, Keck calculated the Home's replacement value as $65,500.00. (*Id.*)

Crutcher, who appraised the Home on behalf of the Debtor, used the comparable sales/market approach, in which he searched the Multiple Listing Service ("MLS") to find sold listings similar to the Home in location, condition, and square footage. Crutcher compared the photos and descriptions in the MLS to the Home's features as evaluated on physical inspection and identified three comparable sales. (Debtor Ex. A at 5). Assessing the Home's condition as "poor" to "average," Crutcher valued the Home at $22,000.00.[5] (*Id.*) Despite the fact that the

---

[5] Crutcher also appraised the Home by the cost approach, in which he used the Marshall & Swift Cost Book (the "Marshall & Swift Guide") to determine how much it would cost in labor and materials to replicate the Home. According to the Marshall & Swift Guide, the cost to replicate the home is $64,896.00. (Debtor Ex. A at 4). After depreciating this value to account for the Home's age and adjusting upward to account for the market value of the Home's location, Crutcher valued the Home at $47,629.00. (*Id.*) Crutcher testified that appraisers typically use the Marshall & Swift Guide only when valuing new construction. Test. of Crutcher at 12:06:40 – 12:09:35. The Hearing was not transcribed. References to the argument and testimony presented at the Hearing are cited by the timestamp of the audio recording.

Home is not attached to land by a permanent foundation, and thus can be moved to and sold in a larger market, Crutcher, on cross-examination, emphasized the importance of the Home's location and testified that his appraisal is based solely on the fact that the Home currently sits in the rural town of Macon, Mississippi.[6]  Indeed, Crutcher testified, "I can't tell you what the manufactured home is worth if it's located somewhere else. I can only tell you what it's worth in Macon, Mississippi, in that location, as of today."[7]  The Court, however, finds that "[a] manufactured home not attached to the land is more like a vehicle to which NADA values apply than like a site-built house to which MLS values apply." *In re Landrum*, slip op. at 4-5.  Thus, the Court rejects Crutcher's methodology.

Crutcher's testimony, however, is relevant in determining the Home's condition.  Nearly two (2) months passed between Keck's inspection and Crutcher's inspection of the Home.  While Crutcher testified that he does not disagree with the faults that Keck found in the Home, Crutcher found that two additional repairs would need to be made: (1) the overhead lights did not work in the bathroom; and (2) the ceiling had stains on it that suggested the Home's roof had sustained water damage.[8]  While these additional repairs are relevant to the Home's condition, Crutcher did not make any adjustments to his valuation with respect to the Home's condition "because if you read the MLS sheets . . . and compare it to the subject, it didn't address any problems with those comparables."[9]  Since Crutcher did not provide the Court with any guidance on the estimated cost

---

[6] Test. of Crutcher at 12:23:05 – 12:27:00.

[7] Test. of Crutcher at 12:23:31 – 12:26:46.

[8] Test. of Crutcher at 11:24:27 – 11:26:37.

[9] Test. of Crutcher at 11:37:58 – 11:38:50.

of the Home's needed repairs, the Court accepts Keck's valuation of the Home but, in its discretion, reduces the amount by $2,500.00 to account for the faults found during Crutcher's inspection of the Home. *See In re The Grind Coffee & Nosh, LLC*, 2011 WL 1301357, at *6. Accordingly, the Court concludes that the adjusted replacement value of the Home is $63,000.00.

During closing arguments, the Debtor argued that the NADA Guide's "inflated" values deny debtors the benefit of filing for relief under chapter 13 of the Code because the values make five-year plans unworkable.[10] The Debtor asked the Court to impose an equitable solution so that the Plan will be successful. While the Court is sympathetic to the Debtor's argument, the NAS's NADA Guide is the favored valuation method both in the Southern District of Mississippi and in other jurisdictions. *See In re Landrum*, slip op. at 3; *In re Munro*, 2017 WL 3141917, at *4; *In re Edwards*, No. 17-02821-5-SWH, 2017 WL 6754026, at *7 (Bankr. E.D.N.C. Dec. 29, 2017); *In re Thornton*, 2016 WL 3092280, at *3; *In re Kollmorgen*, 2012 WL 195200, at *4. Thus, the Court will uphold the NADA Guide's methodology until the Court is presented with an adequate alternative.

**Conclusion**

For the reasons previously stated, the Court sets the replacement value of the Home at $63,000.00

IT IS, THEREFORE, ORDERED that the Objection is sustained in part.

IT IS FURTHER ORDERED that the value of the Home is $63,000.00.

##END OF OPINION##

---

[10] 12:30:20 – 12:32:00.